| | | |
|---|---|---|
| **JAMES J. CUMMINGS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **O R D E R** |
| | ) | |
| **MICHAEL T. BELL, Superintendent of** | ) | |
| **Pender Correctional Inst.,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1); Respondent's Answer and Motion for Summary Judgment (Doc. Nos. 7 and 8) and Petitioner's response to Respondent's Motion for Summary Judgment (Doc. No.12.) For the reasons stated herein, Respondent's Motion for Summary Judgment is granted and Petitioner's Petition for Writ of Habeas Corpus is denied and dismissed.

## I. Procedural History

A review of the record reveals that on December 17, 2003, Petitioner was convicted, after trial by jury, of second-degree murder and felonious larceny. Petitioner was sentenced to 220–273 months imprisonment for the second-degree murder conviction and a consecutive term of 10 to 12 months imprisonment for the larceny conviction. Petitioner gave notice of appeal to the North Carolina Court of Appeals in open court.

While Petitioner's appeal was pending, Petitioner filed a motion requesting post-conviction DNA testing in the Superior Court on May 11, 2005. (See Respondent's Motion for Summary

Judgment, Ex. 5, Appx. B.) On August 2, 2005, the North Carolina Court of Appeals issued an unpublished opinion finding no error in Petitioner's convictions and sentences. State v. Cummings, No. COA04-1228, 2005 N.C. App. Lexis 1560 (N.C. Ct. App. Aug. 2, 2005) (attached to Respondent's Motion for Summary Judgment Ex. 4.) On August 16, 2005, Judge Baker denied Petitioner's motion for post-conviction DNA testing. (See Respondent's Motion for Summary Judgment Ex. 5, Appx. C.)

On September 5, 2005, Petitioner filed, in the Supreme Court of North Carolina, a notice of appeal form, and petition for discretionary review of the North Carolina Court of Appeals' opinion finding no error, and a petition for writ of certiorari to review Judge Baker's order denying post-conviction DNA testing. (Id.) On December 1, 2005, the North Carolina Supreme Court dismissed Petitioner's notice of appeal, and denied his discretionary review petition and certiorari petition. State v. Cummings, 360 N.C. 178 (2005) (unpublished).

On November 27, 2006, Petitioner filed a motion for appropriate relief (MAR) in the Polk County Superior Court. On December 7, 2006 Judge Zoro Guice, Jr. summarily denied Petitioner's MAR, finding that Petitioner showed "no valid claim for any relief." (See Respondent's Motion for Summary Judgment Ex. 8.) On February 12, 2007, Petitioner filed a petition for writ of certiorari with the North Carolina Court of Appeals seeking review of Judge Guice's order denying his MAR. The North Carolina Court of Appeals denied Petitioner's certiorari petition on February 26, 2007. (See Respondent's Motion for Summary Judgment Ex. 11.) Petitioner filed the instant § 2254 petition on June 4, 2007 alleging: (1) that the State withheld exculpatory evidence that would have supported his claim of self defense; (2) that there was an error in the trial court's jury instructions; (3) that he received ineffective assistance of counsel; and (4) that there was insufficient evidence to

support his second-degree murder conviction.

## II. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir.

3

1999).

**III. Analysis**

**A.     There Was No Brady Violation**

As his first claim for relief, Petitioner contends that the State withheld exculpatory evidence that would have supported his claim of self-defense.  Specifically, Petitioner contends that the State withheld: (1) DNA evidence from his clothes and the victim's clothes; (2) pictures of Petitioner's defense wounds; (3) a police report indicating that the victim has assaulted her live-in boyfriend with a deadly weapon; (4) a knife handle that came off the butcher knife that the victim used to attack Petitioner; and (5) crack cocaine pipes that the victim was using to smoke crack cocaine when she attacked Petitioner.

Petitioner's contention is governed by Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.  In Brady, the United States Supreme Court held that the prosecution must disclose to the defendant evidence that is both favorable and material to either his guilt or punishment.  Undisclosed evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (internal quotation marks and citations omitted); see also Strickler v. Greene, 527 U.S. 263 (1999); United States v. Bagley, 473 U.S. 667 (1985).  A "reasonable probability" of a different result is shown when the Government's evidentiary suppression "undermines confidence in the outcome of the trial."  Kyles, 514 U.S. at 434 (quoting Bagley, 473 U.S. at 678.)  An assessment of the materiality of evidence is made in light of the totality of the circumstances. Bagley, 473 U.S. at 683.

Assuming that the prosecution withheld the above noted evidence, Petitioner's claim is

4

meritless because he has not established that the evidence was material, in that there is not a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." Kyles, 514 U.S. at 433-34. Petitioner contends that all of the above-noted evidence would have supported his contention that he acted in self-defense. However, the weight of the evidence admitted at trial indicated that Petitioner did not act in self defense. Prior to his conviction for murdering his sister, Petitioner threatened to "get even with" his sister, the victim, for not allowing him to stay at her residence. (Johnson Transcript at 62.)[1] After murdering his sister, Petitioner dragged her body from the residence, covered it with leaves and dirt, changed his clothes, took the victim's vehicle and some CD's (which he admittedly pawned), threw the knife used in the killing in the woods near the victim's residence, and eventually fled across the State to Fayetteville. (Id. at 68-71, 72-78, 92, and 95-97; Boehmer Transcript at 40-46, 51-52.) Immediately after being arrested in Fayetteville, Petitioner made the following statements to law enforcement: "I killed my sister" and "I did something wrong." (Johnson transcript at 91-92.)

In addition to stab wounds, the victim sustained several blunt-force injuries to her face, including a broken nose and a fractured upper jaw. (Id. at 100, 155.) A claw hammer, with a bloody substance on it later identified as containing the victim's DNA, was discovered in the area of the victim's residence. (Id. at 103-04, 179.) The shape of the hammer was "consistent" with some of the victim's wounds.[2] (Id. at 130-32.)

---

[1] Petitioner's trial was memorialized in two transcript volumes, transcribed by two different court reporters, Johnson and Boehmer. The citations to the transcripts will be by the transcribing court reporters..

[2] The Court is aware that Petitioner has consistently maintained that he did not use a hammer on his sister. The Court notes that Petitioner's counsel effectively brought this out during his direct examination of Petitioner as well as his cross examination of the State's

Moreover, the Court notes that Petitioner has provided inconsistent accounts of the events surrounding the murder. In denying Petitioner's motion for post-conviction DNA testing, Judge Baker found Petitioner's account(s) of the murder, as relayed to the jury through various means including Petitioner's own testimony, to be "often contradictory and [to have] stretched the bounds of reason." (Respondent's Motion for Summary Judgment, Ex. 5, Appx. C at 3.) Judge Baker specifically referred to one pretrial account of the murder given by Petitioner, recorded on audio tape, in which he claimed to have inflicted some of the stab wounds and kicked the victim in the face after she died.[3] Petitioner provided a different version at trial when he testified that the victim came at him with a knife, he tried to grab it, the knife cut him and he hit the victim in the nose with his fist. (Boehmer Transcript at 35.) Petitioner stated that the victim came at him again, they wrestled and during the resulting commotion she was stabbed twice and he kicked her. (Id. at 36.) Given that there was significant evidence presented at trial indicating that Petitioner did not act in self-defense and that his own account(s) of the murder contending that he did act in self defense were inconsistent, Petitioner cannot prove that the allegedly withheld evidence was material.

However, in an abundance of caution, the Court will consider each piece of evidence that the State allegedly withheld. Regarding the withheld DNA testing on certain articles of clothing, Petitioner attached to his § 2254 petition his state motion for post-conviction DNA testing in which he requested testing of a bloody shirt the victim wore at the time of the murder and other garments

witnesses.

[3] As indicated by the North Carolina Court of Appeals in its statement of the facts, the victim did have some post-mortem injuries, but they were neither stab wounds or blunt-force injuries to the head, only scrapes to her chest and legs consistent with her body being dragged from the residence. (Johnson transcript at 158-59.)

collected from her residence. Petitioner alleged in his motion that DNA testing of these items might

reveal that his blood is on them and, thus, disprove Detective Beddington's supposition that the cuts

on Petitioner's hands were self-inflicted after the murder and away from the crime scene.

Even if DNA testing showed that Petitioner's blood was on the garments, such a result would

not support Petitioner's claim of self-defense.[4] This is true especially in light of Judge Baker's order

denying Petitioner's motion for DNA in which he stated that a test which could conclude that

Petitioner's blood was on the clothing in question would not prove that he acted in self-defense or

that he did not have self-inflicted wounds. It would only prove that the injuries did not occur away

from the crime scene. (Respondent's Motion for Summary Judgment, Ex. 5, Appx. C at 2.)

Furthermore, as noted by Judge Baker, Petitioner's own trial testimony, if true, indicated that there

might be some blood present, as he testified that one of his hands was cut, not during the victim's

alleged assault on him, but when he pulled the knife out of her body. (Id.; Boehmer Transcript at

37.)

With respect to the alleged pictures of the knife wounds to Petitioner's hands, a review of

the trial transcript reveals that evidence reflecting the nature of Petitioner's hand wounds was

presented to the jury. Not only was there testimony from the State's witness indicating that

Petitioner had deep cuts on his hands (Johnson Transcript at 112, 194), the State admitted into a

evidence a photograph of Petitioner's hands (Id. at 113; Boehmer Transcript at 5.) Petitioner cannot

establish that the allegedly withheld, unspecified photograph of his hands was material given that

other similar evidence was admitted at trial and was obviously available to defendant. Giles v.

---

[4] The Court notes that no clothing items were sent to the SBI lab for analysis. (Boehmer Transcript at 85, 87.)

<u>Maryland</u>, 386 U.S. 66 (1967) (Fortas, J., concurring) (concluding that convictions should not be reversed where nondisclosed information is "merely repetitious, cumulative, or embellishing of facts otherwise known to the defense or presented to the court"); <u>see cf</u>. <u>Stockton v. Murray</u>, 41 F.3d 920, 927 (4th Cir. 1994) (providing that <u>Brady</u> does not compel disclosure of evidence available from other sources, including diligent investigation by the defense).

Petitioner also contends that a police report of the victim's assault of her boyfriend and crack pipes recovered at the crime scene were withheld from him. However, there was evidence introduced at trial that the victim had previously assaulted her boyfriend when he tried to stop her from pawning a gun to buy crack cocaine, that she had a costly crack habit and that there was a trace amount of cocaine in her body when she was murdered indicating that she used crack on the day of the murder. (Johnson Transcript at 42-44, 159-60). The introduction of this evidence negated any contention that the allegedly withheld police report of the victim's assault on her boyfriend and crack pipes recovered at the scene were material <u>Giles</u>, 386 U.S. at 98.

Last, Petitioner contends that the knife handle from the butcher knife used on the victim was withheld from him. However, Detective Beddington testified that there was a knife handle found at the crime scene. (Johnson Transcript at 124.) Petitioner's claim regarding the knife handle is conclusory in that he does not articulate what evidence he believes could be gleaned from the knife handle that would make it material.

Moreover, Petitioner raised the substance of this claim in his MAR. This state court adjudication on the merits is correct. The state court decision did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e. <u>Brady</u> and its progeny. Nor is the state court adjudication

based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the North Carolina Court of Appeals' opinion will not be overturned under the deferential standards of review contained in section 2254(d) and (e).[5] See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), Yarborough v. Alvorada, 541 U.S. 652 (2004) and Early v. Packer, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

### B. Petitioner's Jury Instructions Claim is Not Cognizable

Petitioner contends that as part of the self defense jury charge, the trial court should have given a no-duty-to-retreat instruction because, under North Carolina law, when attacked with a deadly weapon, a person has no duty to retreat.

Petitioner is not entitled to any relief on this claim because it is not cognizable on federal habeas review. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "Because a state trial court's evidentiary rulings and jury instructions turn on state law, these matters are usually beyond the scope of federal habeas review." Perruquet v. Briley, 390 F.3d 505, 511 (7th Cir. 2004). Thus, a federal habeas court's review of allegedly erroneous jury instructions is limited to

---

[5] The Court is aware that Petitioner presented some of the issues underlying this claim, albeit couched in terms of state statutory law regarding post-conviction DNA testing, in his motion for post-conviction DNA testing. Judge Baker resolved some factual issues and made some conclusions supporting the Superior Court's denial of DNA testing. These findings and conclusions support the denial of Petitioner's claim and like the MAR court's adjudication, will be given deference in these proceedings under § 2254(d) and (e).

assessing whether the instruction "so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 67-68; Henderson v. Kibbe, 431 U.S. 145 (1977) (providing that state court jury instruction must render entire trial fundamentally unfair to warrant federal habeas relief). As discussed in the previous section, there was strong evidence indicating that Petitioner did not act in self-defense, and his own account of the murder contending that he acted in self-defense were contradictory. Petitioner has not established that the Court's failure to give a no duty to retreat instruction was fundamentally unfair. Therefore, Petitioner's claim is not cognizable on federal habeas review.

### C.      Petitioner Did Not Receive Ineffective Assistance of Counsel

Petitioner contends that his counsel was ineffective for failing to hire an expert to rebut the State's contention that the "defensive wounds" on his hands were self-inflicted and for generally failing to present a defense. In a supplemental filing, Petitioner specified that his counsel failed to prove/investigate the following: (1) that Petitioner had defensive wounds from a deadly weapon; (2) that he never left the crime scene and inflicted wounds upon himself; (3) that there is no "medicial [sic] facts" to indicate that the victim was touched with the State's evidence; (4) that his fingerprints were not on the State's evidence; and (5) that the victim's DNA was put on the State's evidence to make it appear as though he did something he did not do. (Doc. No. 3.)

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v.

10

Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992.). The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing, Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993). A presumption exists that counsel is competent. A defendant seeking post-conviction relief bears a heavy burden to overcome this presumption. And the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983).

First, Petition's contentions regarding his counsel's deficient representation are conclusory and unsupported and therefore must be dismissed. Moreover, Petitioner's allegations are without merit. The evidence Petitioner claims his counsel failed to investigate is essentially the same that he claims was withheld from him in his first claim via his Brady claim. As noted in that discussion, the evidence allegedly withheld was not material. It therefore follows that Petitioner cannot establish that he was prejudiced by his counsel's alleged deficient performance in investigating and/or presenting that same or similar evidence. See Strickland, 466 U.S. at 694 (acknowledging that "test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution"); see also Bagley, 473 U.S. at 682-83 (same). Petitioner cannot prove prejudice based on any alleged deficient performance in failing to present/investigate evidence of

11

self-defense, given the substantial evidence admitted at trial indicating that Petitioner did not act in self-defense. Because Petitioner cannot prove prejudice, his ineffective assistance of counsel claim must fail.

Next, this Court notes that it has reviewed the entire trial transcript and finds that Petitioner's counsel's representation was in no way deficient. Indeed, counsel clearly presented a self defense theory and maintained that theory throughout the trial. Such defense theory was evident during counsel's effective cross examination of all the Government witnesses as well as his direct examination of Petitioner. Further, counsel made appropriate objections and twice moved the Court to dismiss the indictment or in the alternative to reduce the charges. (Boehmer Transcript at 7, 92.)

Moreover, the North Carolina Court of Appeals, in response to a different ineffective assistance of counsel claim raised on direct appeal, reviewed the entire transcript of Petitioner's trial and concluded that trial counsel "mounted a competent defense." Cummings, No. COA04-1228, 2005 N.C. LEXIS 1560 at *12. Moreover, Petitioner raised the substance of this claim in his MAR. The MAR court summarily adjudicated all of the claims Petitioner raised in his MAR, including his ineffective assistance of counsel claims. The state court adjudication is correct. The state court decision did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e. Strickland. Nor is the state court adjudication based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the state court's adjudication will not be overturned under the deferential standards of review contained in section 2254(d) and (e). See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of

the doubt.") (internal quotations marks and citation omitted), <u>Yarborough v. Alvorada</u>, 541 U.S. 652

(2004) and <u>Early v. Packer</u>, 537 U.S. 3 (2002) (state court need not cite or even be aware of United

States Supreme Court cases in order to obtain deferential standards of review).

**D.      There was Sufficient Evidence to Support Petitioner's Second-Degree Murder**

**Conviction**

Petitioner contends that there was insufficient evidence to support his second-degree murder

conviction and that the State presented no direct evidence that he did not act in self-defense.

The standard of review on federal habeas corpus of a claim of insufficient evidence is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

of fact could find the essential elements of the crime beyond a reasonable doubt.  See <u>Wright v.

West</u>, 505 U.S. 277 (1992); <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  Furthermore, the Supreme

Court has held that any claim of insufficient evidence is necessarily a federal due process claim.  See

<u>Jackson v. Virginia</u>, 443 U.S. at 321; <u>In re Winship</u>, 397 U.S. 358 (1970).  See also <u>West v. Wright</u>,

931 F.2d 262, 266 (4th Cir. 1991) (any challenge to sufficiency of evidence is necessarily due process

challenge), <u>Overruled on other grounds</u>, 505 U.S. 277 (1979).  It is well established that in reviewing

an insufficiency of the evidence claim, courts must consider circumstantial as well as direct

evidence, and allow the government the benefit of all reasonable inferences from the facts proven

to those sought to be established."  <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982);

see also <u>States v. Fritsch</u>, 351 N.C. 373, 379 ("Circumstantial evidence may withstand a motion to

dismiss and support a conviction even when the evidence does not rule out every hypothesis of

innocence." (quotation marks and citation omitted)), <u>cert. denied</u>, 531 U.S. 890 (2000).

The evidence presented at Petitioner's trial, some of which was recited by the North Carolina

Court of Appeals in its opinion on direct appeal, See Cummings, No. COA04-1228, 2005 N.C. App. LEXIS 1560 at *1-5, was more than sufficient to support Petitioner's conviction and, more specifically, to support the State's theory that Petitioner did not act in self-defense. It is of little consequence that the State may have presented no direct evidence. See Tresvant, 677 F.2d at 1021. Accordingly, Petitioner's insufficiency of the evidence claim is without merit and therefore denied.

Moreover, Petitioner raised the substance of this claim in his MAR, which was denied. The state court adjudication is correct. The state court decision did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e. Jackson and Wright. Nor is the state court adjudication based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the state court's adjudication will not be overturned under the deferential standards of review contained in section 2254(d) and (e). See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), Yarborough v. Alvorada, 541 U.S. 652 (2004) and Early v. Packer, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

## IV. Order

**THEREFORE IT IS HEREBY ORDERED** that

(1)     Respondent's Motion for Summary Judgment (Document No. 8) is **GRANTED**;

(2)     Petitioner's § 2254 Motion (Document No. 1) is **DENIED** and **DISMISSED**; and

(3)     Petitioner's Motions for DNA testing (Doc. Nos. 14 and 15) are **denied** as moot.

**SO ORDERED**.

Signed: June 19, 2008

Graham C. Mullen
United States District Judge